UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JENNY L DAVIS,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Case No. 3:20-CV-303 JD

**OPINION AND ORDER**

Plaintiff Jenny Davis applied for disabled widow's benefits, alleging she is unable to work because she is disabled. An ALJ found Ms. Davis not disabled. Ms. Davis filed a complaint seeking the reversal of the finding and remanding the case for further proceedings based on several alleged errors with the finding. The matter is fully briefed and ripe for decision. [DE 20, 21, 24]. For the reasons stated below, the Court remands this matter to the Commissioner for further proceedings.

**I. FACTUAL BACKGROUND**

On December 30, 2016, Ms. Davis applied for disabled widow's benefits alleging disability beginning November 1, 1984 (R. 33), and later amended her onset date of disability to April 1, 2015 (R. 54).[1] Ms. Davis alleged disability because of panic disorder, anxiety disorder, depression, PTSD, agoraphobia, and insomnia. (R. 112, 124). Between April 2015 and August

---

[1] In order to qualify for disabled widow's benefits under §§ 202(e) and 223 of the Social Security Act, Ms. Davis must show that (1) she is the widow or surviving divorced wife of a wage earner who died fully insured, (2) she is not married, (3) she is between the ages of 50 and 60, (4) she is disabled, and (5) that disability began before the end of the prescribed period. 42 U.S.C. § 402(e). The prescribed period begins the date of the death of the wage earner— here, December 31, 2014—and ends with the month before the month in which the claimant attains 60, or if earlier, either 7 years after the worker's death or 7 years after the widow was last entitled to survivor's benefits, whichever is later. *Id.*; (R. 33). Therefore, in this case Ms. Davis must establish her disability began on or before December 31, 2021 to be entitled to disabled widow's benefits. (R. 33).

2018, Ms. Davis attended a variety of therapy sessions at several locations to address her depression, generalized anxiety disorder, PTSD, and agoraphobia. (R. 333–46, 455–60, 464–75, 476–537, 583, 584–91). During this time, Ms. Davis was also on various medications to help treat these impairments, including Zoloft, Lexapro, Wellbutrin, Buspar, Xanax, Klonopin, Vybrid, Effexor, Ambien, and Diazepam. (R. 501–02). In November 2016, Ms. Davis presented for her first cognitive behavioral therapy treatment for her panic disorder. (R. 415). Throughout therapy treatment, Ms. Davis worked on coping skills to help manage her anxiety and get her out of the house more often. (R. 401, 408).

In March 2017, Ms. Davis underwent a mental status evaluation. (R. 448–51). Upon examination, she appeared tearful, sad, and anxious and stated she had a shot of vodka before arriving. (R. 448). She complained of panic disorder, PTSD, agoraphobia, and insomnia. (*Id.*). She also reported that she dislikes crowds, cannot be with more than one person due to anxiety, and is too anxious to go out. (R. 451). Ms. Davis was diagnosed with generalized anxiety disorder, panic disorder, and alcohol abuse disorder. (*Id.*). In April 2017, she was also diagnosed with social phobia. (R. 471).

At the hearing in front of the ALJ, Ms. Davis and a vocational expert ("VE") testified. Ms. Davis testified that she was unable to work because of her anxiety, depression, and panic disorder. (R. 61). She testified she cannot shop due to panic attacks, she has low energy and no desire to do things, she does not like to be around people and gets "extremely stressed" when she is, and she is unable to complete tasks because she is a perfectionist. (R. 61, 63, 69, 81, 85). Ms. Davis testified to self-medicating with alcohol and Benadryl. (R. 62, 72–73, 86). On February 11, 2019, after the hearing, the ALJ issued an unfavorable decision. (R. 30–41). The ALJ

assessed a residual functional capacity that allowed for work at all exertional levels except that Ms. Davis was limited to:

> simple and routine tasks; the claimant is limited to a work environment free of fast paced or piece rate production work and needs only to meet end of day goals; the claimant is limited to only routine judgment defined as being able to make simple work-relate [sic] decisions; the claimant can only perform jobs that have no interaction with the public, only occasional interaction with supervisors and coworkers, and cannot perform that which involves tandem tasks or teamwork where one production step is dependent on the prior step.

(R. 37). The ALJ found no past relevant work but concluded that based on the VE's hearing testimony, Ms. Davis could perform other jobs that existed in significant numbers in the national economy. (R. 39–40).

Ms. Davis filed a request for review by the Appeals Council, which was denied February 7, 2020. (R. 1). Along with her request for review, Ms. Davis submitted a residual functional capacity questionnaire by Crystal Ridenour, Psych MP, dated April 16, 2019. (R. 2, 13–17). The Appeals Council found that "this evidence does not show a reasonable probability that it would change the outcome of the decision" and therefore, they did not exhibit the evidence. (R. 2).

## II.  STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019); 42 U.S.C. § 405(g). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable

minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the ALJ's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. While the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III.  STANDARD FOR DISABILITY

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential

evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ then uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## IV. DISCUSSION

Ms. Davis asserts two arguments in support of remand: 1) the ALJ's failure to evaluate moderate limitations assessed by the state agency consultants resulted in an RFC unsupported by

substantial evidence; and 2) the Appeals Council committed reversible error in failing to evaluate new and material evidence. The Court addresses the second argument only, as the Court agrees that the Appeals Council committed reversible error, therefore requiring remand. The Court need not address the remaining argument, which can be addressed by the parties on remand.

After the ALJ rendered his decision denying Ms. Davis' claim for disabled widow's benefits, Ms. Davis submitted a mental residual functional capacity assessment completed by psychiatric nurse practitioner Crystal Ridenour on April 16, 2019, which was based on Ms. Davis' treatment at Four County Counseling medical clinic since May 2017. (R. 13–17). Nurse practitioner Ridenour found that several mental abilities and aptitudes necessary for unskilled work were seriously limited. (R. 15–16). She also assessed that Ms. Davis was unable to meet competitive standards with traveling in an unfamiliar place or using public transportation, and she believed that Ms. Davis would be absent from work as a result of her impairments or treatment more than four days per month. As noted above, the Appeals Council denied Ms. Davis' request for review. In doing so, the Appeals Council's denial notice stated: "You submitted a mental impairments form by Crystal Ridenow [sic], Psych MP, April 16, 2019 (8 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence." (R. 2).

The Appeals Council will review a case, among other circumstances, if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). The Commissioner revised the regulations that govern Appeals Council review and the submission of additional evidence in December 2016. *See Ensuring Program Uniformity at the Hearing and Appeals Council Levels*

6

*of the Administrative Review Process*, 81 Fed. Reg. 90987-01 (Dec. 16, 2016). The final rule was effective on January 17, 2017; however, compliance was not required until May 1, 2017. Once the Appeals Council finds the evidence to be new, material, and related to the period on or before the date of the ALJ decision, the revision changed the requirement from reviewing the case if it found that the ALJ's action was contrary to the weight of the evidence to reviewing the case if "there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Stepp v. Colvin*, 795 F.3d 711, 725 (7th Cir. 2015) (quotations omitted). Evidence is "material" if it "creates a reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered." *Id.* (quotations omitted).

On appeal to the district court, the status of the new evidence and the scope of the Court's review of the Appeals Council's denial depends upon the grounds given by the Appeals Council. *See Stepp*, 795 F.3d at 722. If the Appeals Council denies review because new evidence is "non-qualifying under the regulation," the Court conducts a *de novo* review of whether the evidence was relevant under the regulations. *Id*. at 722. If the Court finds that the evidence is new, material, and time-relevant, an error of law exists, and remand may be appropriate. *Id*. (citing *Farrell v. Astrue*, 692 F.3d 767 (7th Cir. 2012)). Conversely, if the Appeals Council found the new evidence was relevant under the regulatory criteria but denied review because the ALJ's decision was not contrary to the weight of the evidence, then the Council's decision not to engage in plenary review is discretionary and unreviewable. *Id*. (citing *Perkins v. Chater*, 107 F.3d 1290 (7th Cir. 1997)).

At the time *Stepp*, *Farrell*, and *Perkins* were decided by the Seventh Circuit, the regulations did not include the "reasonable probability" language. Rather, the new regulations incorporated the language used by the Seventh Circuit in *Stepp* to evaluate materiality as part of the required determination. But because the new regulation continues to require that the evidence be material in the first clause, courts have found "the requirements duplicative when applying the existing Seventh Circuit precedent." *Teresa F. v. Saul*, 2019 WL 2949910, at *8 (S.D. Ind. July 9, 2019). In *Musonera*, the Eastern District of Wisconsin further clarifies:

> In other words, to the extent § 404.970(a)(5) seeks to draw a distinction between a legal determination (in the first clause) and a discretionary one (in the second), the language is redundant. The second clause ("there is a reasonable probability that the additional evidence would change the outcome of the decision") basically restates the definition of the term "material" which appears in the first clause.

*Musonera v. Saul*, 410 F. Supp. 3d 1055, 1060 (E.D. Wis. 2019). The question, therefore, becomes, whether the Appeals Council's use of the language "does not show a reasonable probability that it would change the outcome of the decision," is a legal determination of materiality or a discretionary weighing of the evidence. *Id.*  District courts within the Circuit have reached differing opinions over whether review is available, under the revised regulation, when the Appeals Council uses this language in a denial order. *Id.* (citing *compare Colleen C. o/b/o Daniel I. v. Saul*, 2019 WL 3986077, at *2–3 (N.D. Ill. Aug. 23, 2019) (interpreting this language to mean the Appeals Council rejected the new evidence as non-qualifying and therefore *de novo* review was appropriate); *Ford v. Berryhill*, 2019 WL 11594537, at *10 (W.D. Wis. June 4, 2019) (same) *with Jandt v. Saul*, 2019 WL 4464763, at *5 (E.D. Wis. Sept. 18, 2019) (finding denial using this language discretionary and unreviewable)). *See also Tina C. v. Saul*, 2021 WL 1851655, at *4 (N.D. Ind. May 10, 2021) (finding the same conclusion as *Stepp* and reaching the merits on whether the additional evidence was new and material); *Teresa F.*, 2019 WL 2949910,

at *9 (finding review of the merits as to whether the new evidence was material was appropriate).

The Seventh Circuit has concluded the boilerplate language used in Ms. Davis' case is ambiguous and has suggested that ambiguous statements from the Appeals Council should be construed in favor of review. *Farrell*, 692 F.3d at 771. In *Farrell*, the Appeals Council's decision stated that it "considered . . . the additional evidence . . . [and] found that this information does not provide a basis for changing the Administrative Law Judge's decision." *Id.* In *Stepp*, the Appeals Council summarily denied plaintiff's application for review, explaining that the "additional evidence she presented d[id] not provide a basis for changing the [ALJ]'s decision." 795 F.3d at 721. (quotations omitted). In both cases, the Seventh Circuit found that this text is not as clear as it might be. "On the one hand, it might indicate that the Appeals Council found the proffered new evidence to be immaterial, but on the other hand it might indicate that the Council accepted the evidence as material but found it insufficient to require a different result." *Id.* at 723 (quoting *Farrell*, 692 F.3d at 771). The *Stepp* and *Farrell* courts interpreted the denial notices as rejecting the plaintiffs' new evidence as "non-qualifying under the regulation" and therefore reviewable for legal error on the "limited question" of materiality. Ms. Davis' case is distinguishable from *Perkins* because, by contrast to the notice considered there, which devoted a paragraph to analyzing the new evidence, the Appeals Council here never engaged in such a discussion on the contents of the records submitted by Ms. Davis. *Perkins*, 107 F.3d at 1294. The Appeals Council's notice here is nearly identical to those in both *Stepp* and *Farrell*.

The Commissioner asserts that the Appeals Council's notice was unambiguously making a discretionary decision on the evidence and therefore the denial is unreviewable. However, the Commissioner's argument that "if the Appeals Council found that the evidence was not new and

9

material, it would have said so, and it would not have reached the question of whether the evidence showed a reasonable probability that it would change the outcome of the decision," is exactly what the Seventh Circuit is trying to avoid. *See Tina C.*, 2021 WL 1851655, at *4 (rejecting the same argument from the Commissioner and reaches the same conclusion as the Seventh Circuit did in *Stepp*). In light of the ambiguity and consistent with *Stepp* and *Farrell*, the Court interprets the denial notice as meaning that the Appeals Council found the additional evidence to be non-qualifying under the regulations, and as such the Appeals Council did not adequately assess whether it was sufficient to require a different result. *Stepp*, 795 F.3d at 723, 725. Further, given the nature of the new evidence submitted by Ms. Davis, "materiality review in this case will not require an extensive appraisal of the overall record." *Musonera*, 410 F. Supp. 3d at 1061, 1063. Thus, the Court will proceed to review *de novo* the Appeals Council's decision and will reach the merits on the materiality issue in this case.

It is undisputed by the parties that the additional evidence provided to the Appeals Council is new and relates to the period on or before the date of the ALJ's decision. While the treating psychiatric nurse practitioner did not complete the RFC assessment form until April 16, 2019, it was based on Ms. Davis' treatment at Four County Counseling medical clinic since May 2017. (R. 13–17). Therefore, the only remaining question is whether the Appeals Council erred in finding the evidence immaterial. Evidence is material if, under § 404.970(b), it creates a "reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered." *Stepp*, 795 F.3d at 725 (citing *Perkins*, 107 F.3d at 1296). Here, "the ALJ's decision unequivocally rest[ed] in part on the determination that there [was] no evidence" of a treating physician's opinion as to any specific psychiatric limitations or the necessity of greater limitations than provided by the state agency psychiatric consultants. *Farrell*,

692 F.3d at 771; (R. 38). The ALJ's decision stated, "the record lacks [a] treating physician['s] opinion as to any specific psychiatric limitations" and "no other physician has supplied [an] opinion as to [the] necessity of greater limitations." (R. 38). Ms. Davis' "new evidence fill[ed] in that evidentiary gap by providing exactly that [information]," which reasonably could change the ALJ's assessment of Ms. Davis' RFC. *Farrell*, 692 F.3d at 771.

Here, contrary to the Commissioner's argument, there is a reasonable probability that the new evidence would have altered the ALJ's decision concerning the imposition of further social and mental restrictions in the RFC. The treating nurse practitioner found that several mental abilities and aptitudes to perform unskilled work were seriously limited, including but not limited to: remembering work-like procedures; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; accept instructions and respond appropriately to criticisms from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; and deal with normal work stress. (R. 15). The nurse practitioner wrote Ms. Davis "doesn't respond well to criticism or stressors period" and that she "avoids conflict." (*Id.*). She also assessed that Ms. Davis was unable to meet competitive standards with traveling in an unfamiliar place or using public transportation. (R. 16). She also noted that Ms. Davis would be absent from work as a result of her impairments or treatment more than four days per month. (R. 17). This is a particularly critical limitation that could change the ALJ's RFC assessment as the VE testified it was disabling. (R. 92).

The Commissioner argues the ALJ considered similar allegations of symptoms as those in nurse practitioner Ridenour's opinion and therefore her opinion is generally duplicative and

would not have impacted the ALJ's decision. Particularly, that the ALJ addressed Ms. Davis' reported difficulties being around others, but noted that her other daily activities "indicates that she is capable of some social interaction" and that her agoraphobia did not result in significant difficulties in focus, concentration, persistence, or other difficulties. (R. 36–38). Additionally, the ALJ considered her appearance, behavior, and demeanor at treatment visits. (R. 38). Yet, as the Commissioner argues, the ALJ nevertheless found that Ms. Davis could only perform work with a variety of restrictions on tasks, pace, work-related decisions, and public and co-worker interaction. (R. 37). However, the Court does not find the new evidence duplicative. No other treating source opined that as a result of her mental impairments Ms. Davis would be absent from work four days a month. This opinion alone could impact the ALJ's consideration of Ms. Davis' limitations as the VE has already testified it would preclude employment. (R. 92). On remand, it is reasonable to conclude that based on the new evidence, the ALJ could add greater limitations to Ms. Davis' RFC based on her seriously limited ability to handle work stress, criticism, and conflict or interact with co-workers, even occasionally, without unduly distracting them or exhibiting behavioral extremes. Further, as noted above, given the ALJ's reliance on the lack of an opinion in the record as to the necessity of greater limitations, it is an unreasonable conclusion that such evidence providing support for greater limitations could be duplicative. *See Musonera*, 410 F. Supp. 3d at 1065 (rejecting Commissioner's argument that the new evidence attributing plaintiff's symptoms to fibromyalgia would not change the outcome because the ALJ considered the evidence in the record relating to plaintiff's pain complaints and associated limitations).

While it is true that Ms. Davis bears the burden of proving that she is disabled, the need for additional evidence about the limiting effects of her mental issues was apparent given the

ALJ's repeated reference to the fact that the record lacked a treating physician's opinion on psychiatric limitations. [2] (R. 38). Because the ALJ obviously depended on the absence of a treating physician's opinion on specific psychiatric limitations and the newly submitted evidence undermines that rationale, the evidence is material and the Appeals Council erred in refusing to consider Ms. Davis' new evidence opining on her psychiatric limitations. As a result, the Court remands this case for further evaluation of Ms. Davis' RFC in light of the new and material information presented concerning Ms. Davis' mental impairments, and so the RFC may ultimately be supported by substantial evidence.

## V. CONCLUSION

For those reasons, the Court REVERSES the Commissioner's decision and REMANDS for additional proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: June 16, 2021

/s/ JON E. DEGUILIO
Chief Judge
United States District Court

---

[2] The new evidence is the opinion of a psychiatric nurse practitioner, which is only an acceptable medical source under the regulations with respect to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1502. Ms. Davis filed her claim on December 30, 2016. However, the Commissioner does not challenge Ms. Davis' argument for remand on this basis and therefore waives such argument. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) ("It is a well-established rule that arguments not raised to the district court are waived on appeal."). An ALJ may consider evidence from other sources, such as therapists, social workers, nurse practitioners, or physician assistants, if their "special knowledge of the individual" allows them to "provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p. Here, the nurse practitioner did just that. Accordingly, while the nurse practitioner's opinion may not be considered the same as a treating physician's opinion, the Court finds that the record sufficiently lacked any opinions on Ms. Davis' limitations due to her mental impairments and the new evidence is reasonably probable to fill that evidentiary gap.